471 P.2d 275

**STATE of Arizona, Appellee,**

v.

**James Roy SODERS, Appellant.**

**No. 1645–2.**

Supreme Court of Arizona,
In Banc.
July 9, 1970.

**80**

---

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Blake, Colter & Flickinger by Dwight C. Flickinger, Phoenix, for appellant.

HAYS, Justice.

The appellant, James Roy Soders, was convicted of kidnapping and robbery by a jury in the Superior Court of Pima County. He was sentenced to a term of eight to ten years in the state prison for the robbery, and sentence was suspended on the kidnapping count. His convictions were affirmed in State v. Soders, 101 Ariz. 376, 419 P.2d 733 (1966), but he has been permitted to reopen the appeal on the authority of Anders. v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

The testimony at the trial indicates that Kridelbaugh, the victim, arrived home in his car about 1:15 a.m. on March 31, 1965. As he opened the car door to get out, one Henderson, appellant's co-defendant at the trial, appeared and ordered him to move over, stating that he had a knife stuck at his side. Henderson got behind the wheel, and about the same time appellant Soders got in the front seat from the other car door. They drove off with Kridelbaugh between them, and shortly thereafter they picked up a prostitute and two Indian girls and drove to a lonely spot in the desert. On the way, Henderson smashed his fist into Kridelbaugh's nose. After the car was parked in the desert, Henderson ordered Kridelbaugh out of the car. Henderson and Soders then assaulted him, took his wallet and glasses and, when he ran away, drove off in his car. When Soders and Henderson were arrested by the police, they were driving Kridelbaugh's car, his glasses were in the possession of Soders, and his wallet—with about $35.00 missing —was under the seat of the car. The license plate had been replaced with one stolen from another vehicle.

Henderson, testifying in his own behalf, claimed that much of what Kridelbaugh had related was false, but he admitted that he drove the car, that he and Soders got out of it in the desert, that Soders watched him knock the victim down by a blow to the jaw, after which he said, "That is all we will do." They went back to the car and, when they saw Kridelbaugh running away, he, Henderson, drove off with Soders and the girls and later changed the license plate.

Appellant's first point is that a restraint which is necessarily incidental to the commission of a robbery, cannot be sufficient to support a conviction for kidnapping because it violates Arizona's policy against double punishment as found in A.R.S. § 13–1641.

The evidence indicates that the restraint imposed upon Kridelbaugh went far beyond the restraint necessarily incidental to the commission of the robbery. The victim could have been robbed where he was found. Instead, he was seized and carried away to the desert where the robbery was committed. These actions brought the appellant within the scope of A.R.S. § 13–492, subsec. A which states:

"A person * * * who seizes, confines * * * kidnaps or carries away any individual by any means whatsoever with intent to * * * commit * * * robbery * * * or a person who aids or abets any such conduct, is guilty of (kidnapping)."

To support his argument, appellant cites People v. Knowles, 35 Cal.2d 175, 217 P.2d 1 (1950), and People v. Daniels, Cal., 80 Cal.Rptr. 897, 459 P.2d 225 (1969).

Appellant has read these cases too broadly. In both, the victims were restrained only for such time as was reasonably necessary to complete the companion crime. The restraints imposed in the circumstances there presented were inherent in the commission of the other offenses. Kidnapping and robbery are two distinct crimes. To constitute kidnapping, it is not essential that any personal property be taken. On the other hand, robbery does not require asportation or confinement of the victim which is unnecessary for its commission. The elements of the two offenses are different. One may be committed without the other. In State v. Green, 98 Ariz. 254, 403 P.2d 809 (1965), we upheld convictions of rape, burglary, unlawful mask and lewd and lascivious acts arising out of the same incident. We said that where crimes do not have identical components and their elements are different, they do not fall within the prohibition of A.R.S. § 13–1641.

■ Appellant argues that it was fundamental error for the trial judge to fail to instruct the jury that in order to sustain verdicts convicting him of the crimes of robbery and kidnapping, the jury must find that the acts that formed the basis of the kidnapping were separate from those that formed the basis for the robbery. We reject this argument. The jury was properly instructed in statutory terms as to the meaning of the two separate crimes.

Appellant next argues that the trial court erred by admitting into evidence certain statements of Henderson which, it is claimed, implicated the appellant who was then unable to effectively confront his accuser because his counsel, who represented both defendants, was subject to a conflict of interest.

Appellant principally relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In Bruton, a witness testified that the defendant Evans, who did not take the stand, had orally confessed that he and his co-defendant, Bruton, had committed the crime. The trial judge instructed the jury that it could not

consider this evidence against Bruton because as to him it was hearsay. The jury was permitted to consider the confession against Evans because it constituted an admission, an exception to the hearsay rule. Notwithstanding the court's instructions, the U.S. Supreme Court reversed Bruton's conviction holding that the introduction of such statements, where the co-defendant failed to take the stand, denied Bruton his right to confront the witness against him. Appellant's trial came before the holding in Bruton; however, in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the U.S. Supreme Court made Burton retroactive.

■ Bruton is clearly distinguishable from the facts of this case. At the appellant's trial, one of the arresting officers testified that after informing Henderson of his rights and the seriousness of the charges Henderson replied: "I am guilty. If you say I done it, I am guilty." Later, Henderson took the stand and denied that he made a confession but admitted that he hit the victim. Although he testified that the appellant was present, he stated that the latter was innocent of any wrongdoing. In Bruton, where co-defendant did not take the stand, the court described his statement as "powerfully incriminating." Here, Henderson not only took the stand, but his confession referred only to his own guilt. On the stand, he exonerated the appellant. The only part of his testimony that could be deemed to have implicated the appellant in any manner was where he testified to the appellant's presence. However, the presence of the appellant at the time of the crimes had been earlier established by overwhelming evidence; the testimony of the victim, Kridelbaugh, and three other eye witnesses who were in Kridelbaugh's car.

Appellant makes the point that although Henderson took the stand, he was not subject to effective cross examination because the same counsel represented them both. The argument is pressed that such dual representation brought about a conflict of

interest which denied him his rights of confrontation and assistance of counsel. We do not agree. Although counsel must be left free to argue on behalf of one client without implicating the other, the appellant has failed to demonstrate how the events at his trial operated to repress his counsel's argument to the appellant's prejudice. The record is devoid of any indication that a possible conflict of interest was raised by the appellant's attorney or brought to the attention of the trial judge. The appellant has further failed to show that there was a conflict of interest between himself and Henderson, his co-defendant, by virtue of which his own cause was prejudiced. State v. Pickard, 105 Ariz. 219, 462 P.2d 87 (1969).

Appellant's final contention is that, since the appellant was without effective assistance of counsel and unable to confront his accuser, the jury should have been instructed to disregard, during its determination of appellant's guilt or innocence, any statements of Henderson that could be viewed as damaging to the appellant. We have disposed of this argument by our finding that the appellant was not denied his rights of confrontation and assistance of counsel within the meaning of the Sixth Amendment. Moreover, the trial court gave the only instruction requested by the appellant's counsel and no objections were made to the other instructions that were given by the court.

Even assuming that error was committed, we are of the opinion that it was harmless in that its absence would not have reasonably affected the outcome. In Olivas v. Eyman, 104 Ariz. 163, 449 P.2d 942 (1969), we held that, under the facts, the admission of a co-defendant's implicating statement was harmless error "beyond a reasonable doubt," according to *Bruton*. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). After *Chapman* and *Olivas*, the Supreme Court of the United States decided Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), where the murder con-

viction of the defendant was affirmed notwithstanding the admission into evidence of implicating statements of his two co-defendants who did not take the stand. The court said that the illegally introduced evidence had been "cumulative" and that the state's case against the defendant had been "so overwhelming" that the error was harmless under the rule of *Chapman*, supra.

Judgment of the trial court is affirmed.

LOCKWOOD, C.J., STRUCKMEYER, V.C.J., and UDALL and McFARLAND, JJ., concur.